UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICIA ALLFREY and DAVID ALLFREY, a married couple,

Plaintiffs,

v.

RAY MABUS, Secretary of the Department of the Navy, DEPARTMENT OF THE NAVY, and the UNITED STATES OF AMERICA,

Defendants.

Case No. 09-5793RJB

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion to Dismiss and/or For Summary Judgment (Dkt. 14). The Court has considered the motions, responses, and the relevant documents herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Patricia Allfrey was employed at the Puget Sound Naval Shipyard ("PSNS") from October 2001 to February 2010. Dkt. 14, p. 3. Ms. Allfrey was employed as a Lead Inventory Management Specialist in the Nuclear Material Ordering and Expediting Section ("NMOE Section"). The NMOE section is located under the Nuclear Material Support Branch

ORDER - 1

1   ("NMS Branch") which in turn is located under the Nuclear Material Division ("NM Division").

2   *Id*.  David Walters was the head of the NM Division.  *Id*.  Pam Livick was the manager of the

3   NMS Branch.  *Id*.  Kelly Patton was a Supervisory Inventory Management Specialist and the

4   supervisor of the NMOE section.  *Id*.

5   In 2007, Ms. Patton advised Mr. Walters that she was looking for a non-supervisory GS-

6   12 position within the shipyard.  Dkt. 14, p. 4.  Defendants allege that Ms. Patton's imminent

7   departure created a need to quickly fill the Supervisory Inventory Management Specialist

8   position that she was vacating.  *Id*.  Defendants state that Mr. Walters decided to place someone

9   temporarily in the position until the position could be advertised, and a permanent selection

10  made.  *Id*.

11  Mr. Walters met with Ms. Livick and Ms. Patton to discuss who would be the best person

12  to place quickly into the supervisory position.  Dkt. 14, p. 4.  Ms. Patton recommended Robert

13  McDonald, a Lead Engineering Specialist, who worked for the Nuclear Material Procurement

14  Branch ("NMP Branch").  *Id*.  Ms. Livick concurred with Ms. Patton's recommendation.  *Id*.

15  Defendants state that Mr. Walters was familiar with Mr. McDonald's work history and agreed

16  that Mr. McDonald would be a good choice for the position.  *Id*.

17  Mr. Walters asked whether they thought Ms. Allfrey would be a good choice given that

18  she was the lead technician working under Ms. Patton, and she had the requisite technical

19  knowledge to do the job.  Dkt. 14, p. 5.  Ms. Patton did not recommend Ms. Allfrey for the

20  position because she believed that while Ms. Allfrey was a competent technician, she lacked the

21  communication and conflict resolution skills that she believed to be important for managing

22  employees.  *Id*.

23  In March 2008, Ms. Allfrey learned that Mr. McDonald would be taking the position that

24

ORDER - 2

1  was being vacated by her supervisor, Ms. Patton.  Dkt. 20, p. 1-2.  On or about, April 8, 2008,

2  Ms. Patton gave Mr. Walters notice that she was offered a job and would be leaving in a couple

3  of weeks.  Dkt. 19, ¶ 5.

4    Defendants state that Mr. Walters' task of assigning a person to fill Ms. Patton's position

5  was interrupted by an agency-wide freeze on promotions or reassignments.  Dkt. 14, p.5.  The

6  freeze was put into place because the Navy was in the process of changing from a General

7  Schedule ("GS") pay system to the new National Security Personnel System ("NSPS"), and all

8  personnel actions involving movement between the two pay systems were placed on hold until

9  the rules were revised for the new NSPS system.  *Id*.  As a result of the transition in systems, Mr.

10 Walters was not able to temporarily promote anyone into Ms. Patton's position.  *Id*.

11   Defendants state that even though there was a freeze on promotions, there was no freeze

12 on detailing employees to other positions as long as there was no change in the employee's

13 salary.  Dkt. 14, p. 5.  Mr. Walters was able to detail Mr. McDonald into the supervisory position

14 because the vacant supervisory position was classified a GS-12 position and Mr. McDonald was

15 a GS-12 at the time.  Dkt. 14, p. 5-6.

16   Ms. Patton and Ms. Livick advised Ms. Allfrey of the decision to place Mr. McDonald in

17 the supervisory position of the NMOE section.  Dkt. 14, p. 6.  Defendants states that Ms. Allfrey

18 was upset at the news, and on April 10, 2008, Ms. Livick, Ms. Patton, and Ms. Allfrey met with

19 Mr. Walters to discuss the placement of Mr. McDonald in the supervisory position.  *Id*.  Mr.

20 Walters advised Ms. Allfrey that Mr. McDonald was being placed in the job temporarily and the

21 job would be opened for bid.  *Id*.

22   On April 21, 2008, Ms. Allfrey filed an informal EEO complaint alleging that she was

23 discriminated against on the basis of sex when Mr. McDonald was detailed into the supervisory

24

ORDER - 3

position in the NMOE Branch. Dkt. 14, p. 8; Dkt. 20, p. 2. On April 22, 2008, Mr. Walters sent out an email advising all of his employees of the pending vacancy and encouraging all those interested in the position to update their resumes. Dkt. 14, p. 6, 8. On or about April 28, 2008, Mr. McDonald started working in his new supervisory position.

On June 18, 2008, the new pay system was in place and the freeze was lifted. Dkt. 14, p. 7. Mr. McDonald's detail was converted to a temporary promotion. *Id*. Ms. Allfrey filed another informal EEO complaint in reaction to the conversion of Mr. McDonald's status, wherein she again alleged discrimination on the basis of sex. Dkt. 14, p. 8. Ms. Allfrey also added a claim of reprisal for the filing of her first informal EEO complaint. Dkt. 14, p. 8-9.

On July 8, 2008, Ms. Allfrey filed a formal EEO complaint as to the selection of Mr. McDonald to temporarily fill the supervisor's position. Dkt. 14, p. 9. Ms. Allfrey also added a second claim of retaliation, alleging that she was harassed because subordinates were allegedly told to bypass her and go directly to the supervisor. *Id*.

On July 29, 2008, the Navy accepted for investigation the following claims alleged by Ms. Allfrey: (1) discrimination and retaliation based on the temporary assignment of Mr. McDonald into the supervisory position; and (2) retaliation based on harassment because coworkers were bypassing her and going directly to the supervisor. Dkt. 14, p. 9.

On or about the time Mr. McDonald's status was converted, Mr. Walters continued the process of filing the vacancy. Dkt. 14, p. 7. Four individuals were interviewed for the position, including Ms. Allfrey. *Id*. On August 12, 2008, Mr. Walters convened an interview panel which included himself, Ms. Livick, and Timothy Koonz, a manager from another division. Dkt. 14, p. 7. Mr. Koonz, Defendants assert, was included because he did not work directly with any of the candidates and would bring a fresh perspective to the selection process. *Id*. Defendants state

1  that Mr. McDonald was unanimously scored the highest and was offered the job. *Id*.

2  On August 13, 2008, Mr. Walters announced that Mr. McDonald had been selected to be
3  the new supervisor of the NMOE section. Dkt. 14, p. 7. On August 14, 2008, Ms. Allfrey's
4  attorney contacted the EEO counselor assigned to investigate her claims, and asked to amend the
5  complaint to add another claim of sex discrimination and retaliation as to the failure to select Ms.
6  Allfrey for the permanent supervisory position. Dkt. 14, p. 9. Also, after the announcement was
7  made, Ms. Allfrey took sick leave for "stress caused by unethical medical-management," and she
8  was off work until September 8, 2008. Dkt. 14, p. 7. Defendants state that Ms. Allfrey worked
9  until September 16, 2008, after which she was either on annual leave, sick leave, leave without
10 pay ("LWOP"), or absent without leave ("AWOL"), until she resigned in February of 2010. *Id*.

11 On December 23, 2009, Plaintiffs Patricia Allfrey and her husband, David Allfrey, filed a
12 complaint against Defendants Ray Mabus, Secretary of the Department of the Navy, the
13 Department of the Navy, and the United States. Dkt. 1. Plaintiffs allege employment
14 discrimination and retaliation, and claim loss of consortium. Dkt. 1. On November 26, 2010,
15 Defendants filed a motion to dismiss and a motion for summary judgment. Dkt. 14. Defendants
16 argue that Plaintiffs have not shown a prima facie case regarding their claims. Dkt. 14.

17 **II. DISCUSSION**

18 **A. Motion to Dismiss Legal Standard**

19 Defendants filed a motion to dismiss and, in the alternative, a motion for summary
20 judgment. Dkt. 14. Fed.R.Civ.P. 12(d) state that "[i]f, on a motion under Rule 12(b)(6) or 12(c),
21 matters outside the pleadings are presented to and not excluded by the court, the motion must be
22 treated as one for summary judgment under Rule 56." The parties have presented material
23 outside the pleadings. Defendants' motion shall be considered a motion for summary judgment.
24

ORDER - 5

**B. Summary Judgment Legal Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

1  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not
2  be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

3  **C. Jurisdiction – Miscellaneous Claims**

4  Plaintiffs' complaint alleges employment discrimination and claims jurisdiction pursuant
5  to Title VII and several other miscellaneous statutes.  Dkt. 14, p. 11; Dkt. 1, ¶ II.A.  Defendants
6  state that Title VII of the Civil Rights Act of 1964 provides exclusive remedy for claims of
7  employment discrimination based on race, color, religion, sex and national origin.  Dkt. 14, p.
8  11.  Plaintiffs do not respond to Defendants' argument regarding jurisdiction.  See Dkt. 20; Dkt.
9  23, FN. 2.  There is no genuine issue of material fact regarding jurisdiction because it is
10 uncontested that Title VII provides exclusive remedy in this case.   Moreover, the Court agrees
11 with the argument set forth in Defendants' brief regarding the jurisdiction issue.

12 **D.  Disparate Treatment**

13 Under Title VII of the Civil Rights Act of 1964, it is unlawful "for an employer – (1) to
14 fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any
15 individual with respect to his compensation, terms, conditions, or privileges of employment,
16 because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. §2000e-
17 2(a)(1).

18 Disparate treatment claims brought under Title VII are analyzed under the burden-
19 shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green* 411
20 U.S. 792 (1973).  *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1093-94 (9th Cir.
21 2005).  Under the framework, the burden of production first falls on the plaintiff to make out a
22 prima facie case of discrimination.  *Coghlan*, 413 F.3d at 1094.  A plaintiff may make a prima
23 facie case by showing that (1) he or she belongs to a protected class, (2) he or she was qualified
24

1    for the position held (or for the position to which he or she wished to be promoted), (3) he or she

2    was terminated or demoted from (or denied a promotion to) that position, and (4) the job went to

3    someone outside the protected class. *Id*. The evidence required at this stage is minimal and need

4    not meet the preponderance of the evidence standard. *Aragon v. Republic Silver State Disposal*

5    *Inc*., 292 F.3d 654, 659 (9th Cir. 2002).

6          The burden of production then shifts to the employer, who must present evidence

7    sufficient to permit the factfinder to conclude that the employer had a legitimate,

8    nondiscriminatory reason for the adverse employment action. *Coghlan*, 413 F.3d at 1094. If the

9    employer shows a legitimate reason, then the burden shifts back to the plaintiff to show the

10   proffered reason was pretext for discrimination. *Id*.

11         A plaintiff may meet the burden to show pretext using either direct or circumstantial

12   evidence. *Coghlan*, 413 F.3d at 1094-95. Direct evidence is evidence "which, if believed,

13   proves the fact [of discriminatory animus] without inference or presumption." *Coghlan*, 413

14   F.3d 1095. Circumstantial evidence is evidence that requires an additional inferential step to

15   demonstrate discrimination. *Id*. If a plaintiff relies on circumstantial evidence, that evidence

16   must be "specific and substantial" to defeat the employer's motion for summary judgment. *Id*.

17         As an initial matter, Defendants assert that Ms. Allfrey's causes of action are limited to

18   the claims raised and exhausted at the administrative level. Dkt. 23, p. 1. Those claims are: (1)

19   discrimination on the basis of sex because she was not chosen to temporarily fill a vacant

20   supervisory position; (2) discrimination on the bases of sex and reprisal because when the

21   supervisory position was subsequently opened for competitive bidding, she was not selected; and

22   (3) reprisal because, although she was the lead in her section, her co-workers allegedly were told

23   to bypass her and go directly to the supervisor. Dkt. 23, p. 1-2; Dkt. 14, p. 9. The Plaintiffs have

24

1   not contested that their causes of action are limited to the three claims listed above. Therefore,

2   the Court will only address the claims which are ripe to be addressed.

3       Defendants admit that "[g]iven the low threshold for establishing a prima facie case, Ms.

4   Allfrey can make a prima facie case of disparate treatment based on gender because a male was

5   selected instead of her." Dkt. 14, p. 17. Defendants assert, however, that the Navy had a

6   legitimate reason for selecting Mr. McDonald. *Id*. Defendants state that Mr. McDonald was

7   more qualified than Ms. Allfrey for the position because he had good leadership abilities while

8   Ms. Allfrey lacked leadership skills. *Id*.

9       Ms. Allfrey asserts that the reasons proffered by Defendants were pretextual. Dkt. 20, p.

10  19. Ms. Allfrey alleges that the reasons were pretextual because "Mr. Walters professed that he

11  'needed Bob' in the position," Ms. Allfrey was more qualified than Mr. McDonald, Ms. Walters

12  only advertised the position after the EEO intervened, and the rationale for selecting Mr.

13  McDonald was based on false allegations of mistreatment of co-workers by Ms. Allfrey. Dkt.

14  20, p. 23-24.

15      While the facts, as alleged by the Plaintiffs, may put into question the Defendants'

16  employment actions and may satisfy the prima facie requirements of disparate treatment, it is not

17  enough to satisfy the requirements to establish pretext. Evidence must be "specific and

18  substantial" to defeat the employer's motion for summary judgment. *Coghlan*, 413 F.3d 1095.

19  In this case, the alleged facts are not "specific and substantial." Even though Mr. Walters stated

20  that he "needed Bob" in the position, there was no gender bias in that statement, and it is not

21  possible to infer that there was a gender bias without more. There has been no evidence

22  produced by the Plaintiffs to show that the statement made by Mr. Walters was based on gender

23  discrimination. Considering the totality of the circumstances, the evidence is not sufficiently

24

specific and substantial to show that there was some discriminatory animus based on gender, or to show pretext.

Likewise, the allegations that Ms. Allfrey was more qualified than Mr. McDonald, that Mr. Walters only advertised the position after EEO involvement, and that co-workers made false allegations are not enough to show pretext. Ms. Allfrey has not shown, nor does the evidence infer, that gender discrimination was a reason for the promotion of Mr. McDonald or that any of the Defendants' actions were attributable to a gender bias.

For the foregoing reasons, Defendants' motion for summary judgment should be granted as to disparate treatment.

**E. Retaliation**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees… because he has made a charge" under Title VII. *Thompson v. North American Stainless, LP*, __ U.S. __, 2011 WL 197638 at 3 (2011)(*quoting* 42 U.S.C. § 2000e-3(a)). To establish a retaliation claim under Title VII, a plaintiff must show: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there is causal connection between the protected activity and the adverse action. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). In the retaliation context, an adverse action is something that a reasonable employee would find "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Rail Co. v. White*, 548 U.S. 53, 67-68 (2006). Title VII's antiretaliation provision must be construed to cover a broad range of employer conduct. Thompson, 2001 WL 197638 at 3.

If a plaintiff manages to establish a prima facie case of retaliation, the burden of

1 production shifts to the defendant to provide a legitimate, non-retaliatory basis for having taking
2 the particular employment action at issue. *Bergene v. Salt River Agr. Imp. and Power District*
3 *Project*, 272 F.3d 1136, 1140-41 (9th Cir. 2001). The burden then shifts back to the plaintiff to
4 establish that the defendant's explanation is merely a pretext for unlawful retaliation. *Id*. at
5 1141.

6 Defendants assert that Ms. Allfrey cannot make a prima facie case of retaliation as to the
7 temporary promotion because she cannot establish the required element of having engaged in
8 prior protected activity. Dkt. 14, p. 21. Defendants also assert that Ms. Allfrey cannot make a
9 prima facie case of retaliation as to the permanent promotion because, other than temporal
10 proximity she has no evidence of causation. Dkt. 14, p. 22. Defendants argue that even if it is
11 assumed that a prima facie case is shown as to both the temporary and permanent promotions,
12 the Navy has articulated legitimate business reasons and Ms. Allfrey has failed to show pretext.
13 Dkt. 14, p. 22.

14 Ms. Allfrey argues that the record shows that the duties previously assigned to her were
15 removed from her. Dkt. 20, p. 20. Ms. Allfrey states that this was in retaliation. *Id*. Ms. Allfrey
16 also appears to argue that only in response to the filing of her initial EEO complaint regarding
17 the temporary promotion of Mr. McDonald to the supervisory position, Mr. Walters proceeded to
18 advertise the position. Dkt. 20, p. 11-12.

19 Defendants respond that Plaintiffs' assertion that after Mr. McDonald was permanently
20 promoted, Ms. Allfrey's duties were reassigned to other workers, is without evidentiary support.
21 Dkt. 23, p. 9. Defendants state that no significant duties were taken from Ms. Allfrey, that Ms.
22 Allfrey was at work for only one week after Mr. McDonald was permanently selected, and that
23 self-serving declarations are not enough to survive summary judgment. *Id*.

24

1    Ms. Allfrey has established a prima facie case of retaliation, but she has failed to show

2 pretext overcoming Defendants' assertion of legitimate business reasons.  Ms. Allfrey has shown

3 that she engaged in a protected activity, the filing of EEO complaints.  She has also shown that

4 there was an adverse action, the temporary and permanent promotion of Mr. McDonald and the

5 alleged reassignment of duties.  Finally, there is a plausible casual connection between the

6 adverse action and the protected activity.  This is enough to show a prima facie case.

7    Defendants have shown that they had a legitimate business reason for the promotion of

8 Mr. McDonald and the reassignment of some duties.  Defendants have stated that Mr. McDonald

9 was qualified for the position because he, in addition to having the technical ability to do the job,

10 had prior supervisory experience, had good communication skills, was well liked and respected

11 by his colleagues, and his direct supervisor recommended him. Dkt. 14, p. 4.  In contrast,

12 Defendants assert that Ms. Allfrey, while technically competent, lacked communication and

13 conflict resolution skills. Dkt. 14, p. 5.  Defendants assert that communication and conflict

14 resolution skills were important for managing employees.  *Id*.  Defendants have shown that they

15 had a legitimate business reason for the temporary and permanent promotion of Mr. McDonald.

16    Additionally, Defendants have shown they had a legitimate business reason for assigning

17 some of Ms. Allfrey's duties to other people.  It has been alleged that after Mr. McDonald was

18 selected to the permanent supervisor, Ms. Allfrey took sick leave. Dkt. 14, p. 7.  It was alleged

19 that she was at work from September 8, 2008 to September 16, 2008.  *Id*.  After September 16,

20 2008, the Defendants allege that Ms. Allfrey was either on annual leave, sick leave, leave

21 without pay, or absent without leave until she resigned in February of 2010.  *Id*.  Defendants

22 assert that due to Ms. Allfrey's absence from work, other employees had to do her work. Dkt.

23 23, p. 10.  Assigning duties to other employees due to another employee's absence is a legitimate

24

business reason.

Plaintiffs have not provided specific and substantial evidence to overcome the legitimate business reasons asserted by the Defendants. Ms. Allfrey makes broad allegations. Ms. Allfrey has not shown that the promotion of Mr. McDonald was driven by gender bias. Nowhere does the record show that gender was a consideration for the promotion of Mr. McDonald. The allegation that Mr. Walters stated that "he needed Bob" is not enough to meet the Plaintiffs' burden to show pretext in this case. Additionally, Ms. Allfrey has not shown that the reassignment of her duties was anything other than due to her extended absence. She has not provided any cogent evidence indicating that the reassignment of her duties was based on gender discrimination.

Defendants have shown legitimate business reasons for their actions and the Plaintiffs have failed to show any pretext in those actions. For the foregoing reasons, Defendants' motion for summary judgment should be granted as to Plaintiffs' retaliation claim.

**F. Hostile Work Environment**

Defendants make arguments regarding hostile work environment. Dkt. 23, p. 25. Defendants state that "if Ms. Allfrey is attempting to assert a retaliatory hostile environment claim, such a claim must fail since she cannot make a prima facie case." *Id*. To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Vaszquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Defendants assert that any conduct by the Defendants is not severe or pervasive enough to alter the conditions of Ms. Allfrey's

1 | employment and create an abusive work environment. Dkt. 23, p. 24.

2 | Plaintiffs did not respond to Defendants' arguments regarding hostile work environment
3 | and Plaintiffs have not pled hostile work environment in their complaint. See Dkt. 20 and Dkt.
4 | 1. The Court need not address this claim since it was not pled in Plaintiffs' complaint.

5 | **G. Loss of Consortium**

6 | Plaintiffs alleged loss of consortium in their complaint. Dkt. 1, ¶ VIII. Defendants argue
7 | that this claim is not cognizable under Title VII and must be dismissed. Dkt. 14, p. 12-13.
8 | Plaintiffs do not respond to Defendants' argument. See Dkt. 20; Dkt. 23, FN. 2. There is no
9 | genuine issue of material fact regarding loss of consortium because it is uncontested that Title
10 | VII provides exclusive remedy in this case. For the foregoing reasons, Defendants' motion for
11 | summary judgment should be granted as to Plaintiffs' loss of consortium claim.

## III. ORDER

13 | The Court does hereby find and **ORDER**:

14 | (1) Defendants' Motion for Summary Judgment (Dkt. 14) is **GRANTED**;

15 | (2) Plaintiffs' case is **DISMISSED**; and

16 | (3) The Clerk is directed to send copies of this Order to all counsel of record and any
17 | party appearing *pro se* at said party's last known address.

18 | DATED this 27th day of January, 2011.

*[signature]*

ROBERT J. BRYAN
United States District Judge